Filed 7/30/24  P. v. Song CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B331022 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA494080) |
| v. | |
| JAMES SONG, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Eleanor J. Hunter, Judge.  Affirmed.

Deborah L. Hawkins, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Zee Rodriguez and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant James Song was found guilty by a jury of murder, attempted murder and related felonies arising from a drive-by shooting that occurred on New Year's Eve in 2020. In this appeal, defendant contends the prosecutor engaged in misconduct during voir dire and the court committed sentencing error.

We affirm.

## FACTUAL AND PROCEDURAL SUMMARY

Defendant was charged with murder (Pen. Code, § 187, subd. (a); count 1), premeditated attempted murder (§§ 187, subd. (a), 664; count 2), discharge of a firearm with gross negligence (§ 246.3, subd. (a); count 3), possession of a firearm by a felon (§ 29800, subd. (a)(1); count 4), and shooting from a motor vehicle (§ 26100, subd. (c); count 5). As to counts 1 and 2, it was alleged defendant personally used a firearm within the meaning of section 12022.5, subdivision (a). As to counts 1, 2 and 5, it was alleged defendant personally caused great bodily injury by discharging a firearm from a vehicle pursuant to section 12022.55. Count 2 also included a great bodily injury allegation pursuant to section 12022.7, subdivision (a). It was further alleged defendant had suffered two prior qualifying strike convictions within the meaning of the "Three Strikes" law (§§ 667, subd. (d), 1170.12, subd. (b)).

The testimony at trial, supported by surveillance video and cell phone tower data, demonstrated that on the evening of December 31, 2020, defendant left his home driving a silver Lexus. While driving down Rosewood Avenue, defendant indiscriminately fired a gun from the Lexus. Defendant continued driving and arrived on Taft Avenue approximately eight minutes later where he fired at least three more shots from the car at Edwin Soto and Robert Navarro who were standing outside Navarro's home talking.

Mr. Navarro suffered a nonfatal gunshot wound to his back. Mr. Soto died.

The jury found defendant guilty as charged.

In a bifurcated proceeding, the trial court reviewed and admitted the prosecution's certified records of defendant's prior convictions (Pen. Code, § 969, subd. (b) packet). The court found true that defendant had suffered two prior qualifying strike convictions under the Three Strikes law. The court denied defendant's motion to strike his prior convictions and enhancements pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

The court sentenced defendant as a third strike offender under the Three Strikes law (Pen. Code, § 1170.12, subd. (c)(2)). On count 1, the court imposed an indeterminate term of 25 years to life, tripled due to the prior strikes, plus a consecutive six-year enhancement per section 12022.55 (imposing and staying a midterm on the firearm use enhancement per § 12022.5). On count 2, the court imposed a consecutive term of 25 years to life, plus a consecutive six-year enhancement per section 12022.55 (the court imposed and stayed midterms on the firearm use and great bodily injury enhancements per § 12022.5 and § 12022.7). The court imposed concurrent terms on count 3 (25 years to life) and count 4 (two-year midterm doubled due to the prior strikes), and stayed imposition of sentence on count 5. The aggregate sentence imposed was 100 years to life plus 12 years. Defendant was awarded 819 days of presentence custody credits.

This appeal followed.

## DISCUSSION

### 1. The Prosecutor's Conduct During Voir Dire

Defendant contends the prosecutor committed misconduct during voir dire by using improper questions regarding certain legal

principles to precondition the prospective jurors to return a verdict of guilt.

A claim of prosecutorial misconduct is forfeited by a defendant's failure to " 'make a timely and specific objection to the alleged misconduct and request the jury be admonished to disregard it.' [Citation.] 'A defendant will be excused from the necessity of either a timely objection and/or a request for admonition if either would be futile.' " (*People v. Peoples* (2016) 62 Cal.4th 718, 797.)

Here, the prosecutor began her questioning of the jury panel by discussing the burden of proof and raising a hypothetical about the reasonable doubt standard. Using various similar phrases, she asked the panel if they would follow the reasonable doubt standard or expect to be 100 percent certain before voting for guilt. The prosecutor then moved on to discussing the difference between direct and circumstantial evidence.

After the prosecutor had received responses from several prospective jurors, defense counsel asked if they could approach the bench. At sidebar, defense counsel said he would like to object "only in the sense of trying to talk about the specifics of the law, and hypotheticals . . . . [¶] . . . I feel like [the jurors] don't really know how we're putting this together, and I feel like it's kind of an incomplete picture, kind of almost like prejudging the process."

The court told the prosecutor, "I don't want you kind of giving the jury what the law is and then asking questions about it." The court asked the prosecutor if she planned on discussing other legal principles, and she responded by saying she wanted to ask the panel about whether they could accept that just one witness can prove any fact and also discuss witness credibility. The court said the single witness principle was simple and straightforward and the prosecutor was free to ask questions about that, but the court

4

otherwise did not want the prosecutor "to get into the law" and just "kind of summarize it, without giving the full flavor."

At that point, voir dire continued and was completed without further objections from defense counsel. Defense counsel never requested the court to admonish the prospective jurors to disregard any of the statements made by the prosecutor.

The contention has been forfeited. Defense counsel did not specifically object to any particular question posed by the prosecutor, nor did counsel request the jury be admonished to disregard any allegedly improper statements. Defendant's claim that a further objection would have been futile is without merit. The court largely agreed with defense counsel's concerns and told the prosecutor not to attempt partial summaries of jury instructions or legal principles. Nothing in the record indicates the court would have been unreceptive to a further, more specific objection from defendant or that it would not have agreed to admonishing the prospective jurors to disregard any such statements had it been requested to do so.

However, even if defendant's contention was not forfeited, it lacks merit. "Under California law, to establish reversible prosecutorial misconduct a defendant must show that the prosecutor used ' "deceptive or reprehensible methods" ' and that it is reasonably probable that, without such misconduct, an outcome more favorable to the defendant would have resulted. [Citation.] A prosecutor's misconduct violates the federal Constitution if the behavior is ' " ' " ' " 'so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.' " ' " ' " ' " (*People v. Caro* (2019) 7 Cal.5th 463, 510.)

Defendant has not shown the prosecutor engaged in reprehensible tactics or that the trial was rendered fundamentally unfair. The prosecutor posed a few questions to the prospective

jurors about relevant legal principles like the burden of proof. While the prosecutor did not quote verbatim from the jury instructions, her questions were reasonably understood as discussing the legal concepts generally. Where a claim of misconduct is focused on the prosecutor's remarks to the jury, " 'we determine whether there was a reasonable likelihood that the jury construed or applied any of the remarks in an objectionable fashion.' " (*People v. Nadey* (2024) 16 Cal.5th 102, 156, petn. for rehg. pending, petn. filed June 28, 2024, time for grant or denial of rehg. extended to Sept. 15, 2024; accord, *People v. Booker* (2011) 51 Cal.4th 141, 184–185.) We do not find that is reasonably likely here.

In any event, there is also no showing of the requisite prejudice. The prospective jurors had already been preinstructed by the court on the presumption of innocence and other relevant principles. The prosecutor started off her questioning by telling the prospective jurors that everyone just wanted a jury that would be "fair to both sides, listen to all the evidence, follow the law, and make a decision based on that. So please don't feel like I'm trying to pressure you into any answers." Nothing in the record supports the assertion that the prosecutor was attempting to persuade the jurors to prejudge the case in favor of guilt.

Moreover, the court fully instructed the jury on the applicable law. Defendant does not claim any of the court's instructions to the jury were infirm. To the extent the prosecutor's comments during voir dire on the law were incomplete, the jury was given correct and complete instructions by the court before deliberating. We cannot see how anything the prosecutor said could have misled or confused the jury or caused them to prejudge the case against defendant. As our Supreme Court has explained, " 'it is unlikely that errors or misconduct occurring during voir dire questioning will unduly

6

influence the jury's verdict in the case. Any such errors or misconduct "prior to the presentation of argument or evidence, obviously reach the jury panel at a much less critical phase of the proceedings . . . ." ' " (*People v. Woodruff* (2018) 5 Cal.5th 697, 756, quoting *People v. Medina* (1995) 11 Cal.4th 694, 741.)

## 2. The Sentence Enhancements

Defendant contends the court committed sentencing error in imposing enhancements on counts 1 (murder) and 2 (attempted murder). Defendant first argues that Penal Code section 654 precluded the court from imposing two bodily injury enhancements on count 2. Defendant also argues the record does not show the trial court understood the scope of its discretion, under newly enacted subdivision (c) of section 1385, to strike or dismiss multiple enhancements on counts 1 and 2 and that remand for resentencing is warranted. We reject both contentions.

On count 2, the jury found true both of the great bodily injury allegations: infliction of great bodily injury under Penal Code section 12022.7, subdivision (a), and infliction of great bodily injury caused by shooting from a vehicle under section 12022.55. In imposing sentence, the court followed the correct procedure under section 654. The court imposed sentences on both enhancements and then stayed the term imposed under section 12022.7. (*People v. Deloza* (1998) 18 Cal.4th 585, 592 [where § 654 applies, it requires imposition of sentence under one statute and sentence under the second statute is also "imposed and then stayed"]; *People v. Eck* (1999) 76 Cal.App.4th 759, 763 [because § 654 precludes multiple punishments, not multiple convictions, court correctly imposed great bodily injury enhancements under both § 12022.7 and § 12022.55 but should have stayed the former].)

Finally, we do not think there is any merit to defendant's argument the trial court did not understand the scope of its

authority with respect to striking or dismissing the multiple enhancements on counts 1 and 2. Senate Bill 81 (2021–2022 Reg. Sess.), which added subdivision (c) to Penal Code section 1385, became effective January 1, 2022. (Stats. 2021, ch. 721, § 1.) Defendant's sentencing hearing was held a year and a half later, on June 7, 2023, before an experienced bench officer. "In the absence of evidence to the contrary, we presume that the court 'knows and applies the correct statutory and case law.'" (*People v. Thomas* (2011) 52 Cal.4th 336, 361.)

Nothing in the record here demonstrates the court was unaware of its sentencing discretion to strike an enhancement. After entertaining argument on, and denying, defendant's *Romero* motion with respect to his prior qualifying strikes, the court moved on to defendant's request to strike enhancements. The court expressly acknowledged reading the parties' briefs on the issue and thanked counsel for being thorough, saying "thank you so much for laying out all of the things that you had pointed out under [Penal Code section] 1385. That's a relatively—it's a newer statute, and so the court is aware of that and also takes it into consideration about where the court has to look, and the court shall consider and afford great weight to any of the mitigating factors, and you did present a couple." The court went on to say, "However, at the heart of it is also balancing with the fact that the defendant might be a danger to the public, and so there's always a balancing act, and the code section actually highlights that." The court expressly referenced the language of section 1385, subdivision (c).

The court went on to emphasize that the evidence showed defendant engaged in two separate intentional acts of shooting at "two innocent guys," calling the crimes "just tragic and so senseless." Based on the nature of the crimes and defendant's

8

actions, the court denied defendant's request to strike the enhancements.

## DISPOSITION

The judgment of conviction is affirmed.


GRIMES, J.


WE CONCUR:


STRATTON, P. J.


VIRAMONTES, J.